**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| ROSALINA LOPEZ, | : | CIVIL ACTION NO. |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | **JURY TRIAL DEMANDED** |
| | : | |
| POSIGEN CT, LLC | : | |
| | : | |
| Defendant | : | SEPTEMBER 6, 2021 |

**COMPLAINT**

**JURISDICTION AND VENUE**

1. This action arises under the Americans with Disabilities Act Amendments Act (ADAAA), 42 U.S.C. § 12101 et seq; Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2; Family Medical Leave Act (FMLA), 29 U.S.C.A. § 2615, and § 2612; Connecticut General Statues § 46A-60(b)(1) (b)(4); and Connecticut State Law.

2. The jurisdiction of this court is founded upon 28 U.S.C. §1331 (federal question) and the provisions of 28 U.S.C. §1343.

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. §1391(b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's supplemental state law claims are invoked pursuant to 28 U.S.C. §1367 as the claims arise out of the same transaction and occurrences as Plaintiff's federal claims.

5. Costs, expert witness fees, and attorney's fees are sought pursuant to 42 U.S.C. §1988.

-1-

## PLAINTIFF

6.   The Plaintiff, Rosalina Lopez ("Plaintiff" or "Lopez") is a natural person and resides at 371 Nichols Street, Bridgeport, CT 06088.

## DEFENDANT

7.   The Defendant, Posigen CT LLC ("Defendant" or "Posigen"), is incorporated in the State of Connecticut with its corporate headquarters located in Louisiana and conducts substantial business in the State of Connecticut, maintaining a principal place of business at 345 Huntington Turnpike, Bridgeport, CT 06610, where Plaintiff was employed.

8.   Posigen employs more than fifteen (15) employees.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9.   The Plaintiff received a Notice of Right to Sue on June 11, 2021.

10.  The Plaintiff received a Release of Jurisdiction on June 10, 2021.

## FACTUAL ALLEGATIONS

11.  Plaintiff, Lopez, is Hispanic and was 59-year-old at the time of the events. DOB 6/8/61.

12.  Plaintiff was one of the only two Hispanics at Posigen at the time of these events.

13.  Lopez was one of the three oldest employees in her department.

14.  Plaintiff was hired on September 25, 2018, for the Inside Sales position.

15.  Since the onset of her employment, Plaintiff was one of the top producers at Posigen, always meeting and exceeding her monthly sales quota as evidenced by her sales numbers and continuous recognition of her outstanding performance and achievements.

-2-

16. Furthermore, throughout her employment Plaintiff was always an important asset of Posigen among the Hispanic community who always found in her an honest and reliable person with whom they can relate to and trust to offer their business.

17. Plaintiff was a very valuable connection that Posigen held with its Hispanic customers.

18. As stated, Plaintiff, at all times performed her work in a satisfactory manner. However, she began experiencing serious health issues due to the deplorable conditions of the building she was assigned to, inclusive of mold.

**A. Posigen's Failure to Accommodate.**

19. Since the commencement of Plaintiff's duties, she began suffering severe allergies, headaches, nausea, dizziness, and many other discomforts as a result of the multiple irregularities that were present at Defendant's deteriorated, filthy, mold-infested, old building.

20. As it turns out, this has had a long-lasting, and perhaps permanent negative effect on her health.

21. Mold, roach infestation, fetidness, and leaking ceilings are some of the most threatening hazards that Plaintiff was subjected to endure throughout the extended period, she was harmfully kept at this inadequate and outright unhealthy location.

22. Nonetheless, Plaintiff made her best effort to endure these difficult circumstances given the commitment made by Posigen of moving to a new location in short order.

23. However, as time went by, Plaintiff's symptomatology and allergic reactions became increasingly severe and required her to urgently engage in necessary medical treatment.

24. At first, she treated with her primary Physician, Dr. Nicholas Bertini, who diagnosed Lopez with a sinus infection which required her to seek further medical treatment.

25. As a result of the persistent harmful work environment maintained by Posigen, Plaintiff was diagnosed with a serious respiratory infection that required her to be prescribed with a high dosage of antibiotics and steroids.

26. Despite the treatment, Plaintiff's health condition continued to deteriorate due to the constant exposure to the factors generating allergic reactions, namely, Posigen's negligence.

27. Due to Posigen's negligence and failure to provide Plaintiff with a habitable work environment, she required medical treatment from an ear, nose, and throat ("ENT"), Doctor.

28. On July 22, 2019, Plaintiff treated with Dr. Sara Richer ("Dr. Richer"), an otolaryngology (ear, nose & throat) specialist who ordered blood work to be done.

29. It was found as a result of the blood test, that Plaintiff had <u>mold in her bloodstream</u>, which could be directly linked to her work environment.

30. Given the gravity of the results from in Plaintiff's blood work, Dr. Richer advised her to urgently see an allergist specialist.

31. On August 12, 2019, Plaintiff treated with Dr. Katherin Bloom ("Dr. Bloom") who ordered an allergy test confirming that Plaintiff did, in fact, have mold in her system and it was the main cause for the symptomatology.

32. Tellingly, Plaintiff was not the only employee suffering from the deplorable conditions at this office building, and in that regard, some other complaints were made about these unbearable circumstances.

-4-

33. In point of fact, the Connecticut Health Department was contacted by another employee and two inspections were performed at Posigen finding, as expected, the presence of mold in this building.

34. Despite the fact that Plaintiff, on multiple occasions made her supervisor, Brian Weiss ("Weiss"), aware of the serious health issues she was enduring, no accommodation under the ADA or assistance in any manner was offered to her in order to alleviate her serious health condition.

35. Plaintiff also made management aware that the mold was affecting her health, who negligently advised her to just "hang on." An unacceptable answer that an employee who is enduring severe health issues should never receive.

36. Posigen, instead of engaging in the required Americans with Disabilities Amendments Act ("ADAAA") "interactive process" to determine how to accommodate Plaintiff's known disability, opted to instead question and admonish her about the days she was required to be out of work due to the severity of the respiratory infection and the other many discomforts she was suffering from, directly attributable to her unhealthy work environment.

**B. Posigen's Failure to Offer Appropriate Leave Under the Family and Medical Leave Act for a Qualifying Serious Health Condition.**

37. In addition, as a separate matter that was mishandled by Posigen, it directly denied Plaintiff's request for leave on October 30, 2019, pursuant to her rights under the Family Medical Leave Act (FMLA), when she clearly needed it in order to care for her mother who had a developing cancer, undoubtedly, a qualifying "serious health condition," under the FMLA.

38. Subsequently, Plaintiff requested additional absences to care for her ill mother, and again, was not provided notice of her rights under the FMLA.

39. Moreover, Plaintiff had been under a doctor's care, and strikingly, her FMLA rights were equally ignored.

**C.  Too Little, Too Late.**

40. The other employees and Plaintiff were finally relocated to another building on September 30, 2019.

41. This is too little, too late, as the damage to Lopez's respiratory health is irreversibly done, and the severe consequences for her well-being were already altering the normality of her life, not to mention the future effects that being exposed to mold for such a long time will bring to her elderly years, the cost and the suffering she will have to endure after working in such an unhealthy work environment for months and months, to her severe detriment.

42. Plaintiff's life quality has been severely affected, as well as her finances after be required to attend multiple medically necessary doctor's appointments and subjecting herself to numerous medical procedures and treatments, which were otherwise avoidable.

43. Plaintiff's emotional well-being has turned into feelings of anxiety and depression caused by her seemingly never-ending sick condition, proximately caused by Posigen.

44. It is currently unknown the future side effects of the long exposure to mold on Plaintiff's health, but it is well-known and supported by medical records that the irresponsible business decision made by Posigen of keeping Plaintiff (and the other

-6-

employees) for a very long time at a building in highly unhealthy and deplorable conditions, has caused potential permanent and severe damage to her health.

**D.  Ms. Lopez Treats with Multiple Doctors Due to the Health Problems She was Experiencing Caused by the Mold in Defendant's Workplace.**

45.  On October 29, 2018, Lopez treated for ear and sinus pain with Dr. Kamrasyid.

46.  On December 11, 2018, Lopez, treated because  "[a]t work yesterday [she] was exposed to fumes from sewer leak … started to develop a headache and metallic taste. Works in an older building…." Reported a sore throat, cough, nasal congestion, and body aches.

47.  On December 17, 2018, Lopez reported again being exposed to the sewage smell at work and developing a metallic taste in her mouth, laryngitis, and nausea.

48.  On December 18, 2018, Lopez treated again at Yale New Haven Hospital (YNHH). Lopez complained of being exposed to a sewage smell and again developing a metal taste, sore throat, lost voice, and cough. Lopez further explained that the symptoms are due to her work environment, rather than an illness.

49.  On January 31, 2019, Lopez treated with her doctor again. Lopez stated that she was experiencing occasional headaches for two weeks.

50.  On May 20, 2019, Lopez reported for worsening chest congestion, fatigue for 4 days, chest tightness, wheezing, and shortness of breath.

51.  On June 21, 2019, Lopez treated again for a sore throat and other issues, stating that she is unable to better her health because of her work environment. Lopez reported that she develops the symptoms as soon as she gets into her work building on a daily

basis. She reports a sore throat, cough, and metallic taste in her mouth. Lopez also reported feeling dizzy once inside the building.

52. On July 22, 2019, Lopez treated with her physician again. She complained of throat discomfort and hoarseness, a foul/metallic taste in her throat, nasal congestion, postnasal drip, headaches, sneezing, and rhinorrhea. Lopez complained that her symptoms are related to her work because she has been in an old building since September which is approximately when her symptoms began. Lopez also stated that her symptoms improve on weekends when she is home. Her doctor further opined that "she appears to be having a reaction to an environmental trigger at her workplace" and that "she may be experiencing symptoms from mold exposure."

53. On July 29, 2019, Lopez treated again. Felt lightheaded, fatigued, and was experiencing multiple other symptoms.

54. On August 12, 2019, Lopez reported to Dr. Richer, an allergy and asthma specialist. She reported worsening symptoms that coincided with starting a new job in an "old building likely contaminated with mold." Lopez had been treating repeatedly for recurrent sinusitis and upper respiratory infections.  Lopez stated that "[s]he feels her symptoms are directly related to where she works, feels better on the weekends.  Dr. Richer opined that Lopez's "**allergy symptoms … now affected due to her current workplace**."

55. On September 23, 2019, Lopez sought additional medical assistance, complaining of sinus pain and ear pain, progressively getting worse.

56. On October 15, 2019, Lopez treated with Dr. Bloom, an allergy and asthma specialist. Lopez reported that even after the company moved to Huntington, she is still experiencing headaches, some days intense, and nasal congestion, and sinus pressure.

57. In January 2020, suffered heart issues that required her treating doctor to keep her overnight at St. Vincent Hospital and was given nitroglycerin twice to control her symptoms.

58. On February 3, 2020, Plaintiff's treating doctor discovered, through blood work, that Plaintiff's thyroid is malfunctioning and that she now had a severe Vitamin C deficit.

59. On top of this, Plaintiff had been recently verbally attacked by another employee and Weiss completely failed to discipline this team member, further supporting the aforementioned discriminatory conduct, negligent supervision, and harassing work environment that Plaintiff had been enduring.

60. As the company's latest salvo, on February 24, 2020, Weiss issued Plaintiff a written warning, as part of a pattern of harassment in order to get her terminated or force her to resign.

61. Plaintiff was also forced to sign this disciplinary action under extreme duress, adding to her already existing emotional distress.

62. Plaintiff had reached out to HR with no response explaining that the new mandatory schedule change is detrimental to her health and her ability to care for her elderly parents.

63. Plaintiff's original schedule allowed her the ability to check on her parents in the morning and evening.

64. This lack of assistance was negatively affecting Plaintiff's health, including, but not limited to the fact that she previously had been able to control her thyroid for over ten years and now it has been acting up due to stress.

## COUNT ONE

## RACE, ANCESTRY, ETHNICITY, AND NATIONAL ORIGIN DISCRIMINATION, IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

65. Plaintiff hereby incorporates Paragraphs 1-64 with the same force and impact as if fully set forth herein.

66. Defendant employs more than fifteen (15) employees.

67. Plaintiff was qualified for her position.

68. Plaintiff, a Hispanic is in a protected class.

69. Plaintiff was one of the only two Hispanics at Posigen at all times relevant.

70. Due to her outstanding performance and skillset, Plaintiff was continually recognized as one to the top producers, but because of the characteristics associated with her Hispanic race, she was treated differently and discriminated against.

71. The Plaintiff suffered numerous discriminatory and adverse employment actions, including, but not limited to, the following:

    i.    Keeping her in hazardous work conditions that caused her serious health issues;

    ii.    Writing her up for absence on days she could not attend work due to the serious health problems that Defendant's actions and negligence caused her;

    iii.    Changing her schedule in a manner that deeply affected her duty to care for

      her elderly parents;

    iv.    Hindering her request for FMLA;

    v.    Forcing her to constructively discharge on April 27, 2020, given the gravity of her health condition caused by the defendant's decision of making her work in such precarious conditions.

72. The above prescribed discriminatory acts were motivated because by the fact that Plaintiff is a Hispanic.

73. Defendant's conduct is unlawful and in violation of Title VII of the Civil Rights Act.

74. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

75. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT TWO

### DISABILITY DISCRIMINATION, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

76. Plaintiff hereby incorporates Paragraphs 1-64, with the same force and impact as if fully set forth herein.

77. As a result of the mold infestation at her workplace, Plaintiff developed a respiratory infection, thyroid malfunction, sinus infection and anxiety, non-transitory disabilities.

78. Defendant treated Plaintiff in a disparate manner in the terms and conditions of her employment based upon her disability, including, but not limited to the following:

    i.    Keeping her in hazardous work conditions that caused her serious health

issues;

    ii.   Writing her up for absence on days she could not attend work due to the serious health problems that Defendant's actions and negligence caused her;

    iii.   Changing her schedule in a manner that deeply affected her duty to care for her elderly parents;

    iv.   Hindering her request for FMLA;

    v.   Forcing her to constructively discharge on April 27, 2020, given the gravity of her health condition caused by the defendant's decision of making her work in such precarious conditions.

79. The above prescribed discriminatory acts were motivated because by the fact that Plaintiff suffered from a disability.

80. Defendant's conduct is unlawful and in violation of the ADAAA.

81. As a result of Defendant's wrongdoing, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

82. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT THREE

### FAILURE TO ACCOMMODATE, IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

83. Plaintiff incorporates paragraphs 1-64, with the same force and impact as if fully set forth herein at length.

84. Defendant employs more than fifteen (15) employees.

-12-

85. As a result of the mold infestation at her workplace, Plaintiff developed a respiratory infection, thyroid malfunction, sinus infection and anxiety.

86. Plaintiff, on multiple occasions, made her supervisor, Weiss, aware of the serious health issues she was enduring. However, no accommodation or assistance in any manner was offered to her in order to alleviate her serious health condition.

87. Plaintiff also made management aware that the mold was affecting her health. Management did nothing in this regard and only instructed Plaintiff to "hang on."

88.  Posigen failed to accommodate the Plaintiff's known disability, by, among other things:

      i.    Failing to engage in the interactive process, despite knowing or reasonably should have known of Plaintiff's disability;

      ii.    Failing to accommodate Plaintiff's disability after several requests for an accommodation; and

      iii.    Forcing Plaintiff to constructive discharge from her position on April 27, 2020.

89. Defendant's conduct is unlawful and in violation of the ADAAA.

90. As a result of Defendant's wrong actions, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

91. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT FOUR

### RETALIATION,
### IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AMENDMENTS ACT

92. Plaintiff incorporates paragraphs 1-64 and 83-91 with the same force and impact as if fully set forth herein at length.

93. Among other factors that motivated Posigen's retaliation against Lopez was her multiple requests and persistence for accommodation.

94. As a result of being forced to constructively discharge from her position, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

95. Plaintiff seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT FIVE

### AGE DISCRIMINATION,
### IN VIOLATION OF CONN. GEN. STAT. § 46A60-(B)(1)

96. Plaintiff hereby incorporates Paragraphs 1-64 with the same force and impact as if fully set forth herein.

97. Defendant employs more than three employees.

98. Plaintiff was qualified for her position.

99. Plaintiff, fifty-nine (59) years of age is in a protected class.

100. Plaintiff was one of the three oldest employees in her department, at the time of these events.

101. Due to her outstanding performance and skillset, Plaintiff was continually recognized

-14-

as one to the top producers, but because of her older age, she was treated differently and discriminated against.

102. The Plaintiff suffered numerous discriminatory and adverse employment actions, including, but not limited to, the following:

    i.    Keeping her in hazardous work conditions that caused her serious health issues;

    ii.    Writing her up for absence on days she could not attend work due to the serious health problems that Defendant's actions and negligence caused her;

    iii.    Changing her schedule in a manner that deeply affected her duty to care for her elderly parents;

    iv.    Hindering her request for FMLA;

    v.    Forcing her to constructively discharge on April 27, 2020, given the gravity of her health condition caused by the defendant's decision of making her work in such precarious conditions.

103. The above prescribed discriminatory acts were motivated because by the fact that Plaintiff is older.

104. Defendant's conduct is unlawful and in violation of C.G.S. § 46a60(b)(1).

105. As a result of the Defendant's unlawful conduct, Plaintiff has suffered, and will continue to suffer damages, including but not limited, to substantial lost wages, fringe benefits, health insurance, retirement and pension benefits, mental and emotional distress and the ability to enjoy life's pleasures.

106. Plaintiff seeks damages as a result of Defendant's unlawful conduct.

## COUNT SIX

**RETALIATION,
IN VIOLATION OF C.G.S. § 31-51Q**

107. Plaintiff hereby incorporates Paragraphs 1-64 with the same force and impact as if fully set forth herein.

108. Plaintiff was exercising her free speech on matters of public concern by reporting issues of workplace safety, and specifically, mold.

109. Lopez was exercising her free speech on matters of public concern by reporting issues of safety, workplace safety, and worker endangerment, with respect to mold in the workplace.

110. Plaintiff's decision to report concerns regarding workplace safety, worker endangerment, and mold in the workplace are consistent with her desire to adhere to workplace safety standards and guidelines and constitute protected activity.

111. Lopez complained multiple times regarding mold in the building and she made management aware that the mold was affecting her health, who negligently advised her to just "hang on."

112. Lopez's good faith concerns were confirmed by the Connecticut Health Department which performed two inspections at Posigen, and found the presence of mold in this building.

113. Plaintiff, in retaliation for her good-faith complaints and raising awareness to serious health concerns, was retaliated against by Posigen, including, but not limited to the following:

   i.   Keeping her in hazardous work conditions that caused her serious health

issues;

    ii.   Writing her up for absence on days she could not attend work due to the serious health problems that Defendant's actions and negligence caused her;

   iii.   Changing her schedule in a manner that deeply affected her duty to care for her elderly parents;

   iv.   Hindering her request for FMLA;

    v.   Forcing her to constructively discharge on April 27, 2020, given the gravity of her health condition caused by the defendant's decision of making her work in such precarious conditions.

114.   Lopez's speech is protected by Sections, 3, 4, and 14 of the Connecticut Constitution.

115.   The exercise of her rights did not materially interfere with her job performance, nor did it interfere with her job performance or working relationship with Defendants.

116.   Plaintiff was constructively discharged due to the exercise of her rights guaranteed by the Connecticut Constitution, in violation of Conn. Gen. Stat. §31-51q.

117.   As a result of her wrongful discharge, Lopez has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

118.   Lopez seeks compensatory and punitive damages for Defendant's misconduct.

## COUNT SEVEN

### INTERFERENCE WITH FMLA RIGHTS,
### IN VIOLATION OF 29 U.S.C.A. § 2615

119. Plaintiff hereby incorporates paragraphs 1-64 with the same force and impact as if fully set forth herein.

120. The Defendant is considered an employer under the FMLA, employing over fifty employees.

121. The FMLA provides that "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise" an eligible employee's rights under the FMLA. 29 U.S.C.A. § 2615(a)(1).

122. The FMLA guarantees eligible employees 12 weeks of leave following certain events such as to care for a family member's serious illness.  29 U.S.C. § 2612(a)(1).

123. Posigen, directly denied Plaintiff's request for leave on October 30, 2019, interfering with her rights under the FMLA, when she clearly needed it in order to care for her mother who had a developing cancer,  undoubtedly, a qualifying "serious health condition," under the FMLA.

124. Subsequently, Plaintiff requested additional absences to care for her ill mother, and again, was not provided notice of her rights under the FMLA.

125. Moreover, Plaintiff had been under a doctor's care, and strikingly, her FMLA rights were equally ignored.

126. Plaintiff was eligible and entitled to leave under the FMLA, due to the need to attend to her mother's medical needs, who had a qualifying "serious health condition."

127. The Defendant's interference with Plaintiff's FMLA rights includes, but is not limited:

   (a) Failing to notify Plaintiff of her FMLA rights, after learning of a qualifying serious health condition.

   (b). Denial of FMLA.

128. As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages, including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

129. Plaintiff's rights were violated under the FMLA, 29 U.S.C.A. § 2615, as described above.

130. Plaintiff is seeking damages as a result of Defendant's unlawful conduct.

## COUNT EIGHT

### NEGLIGENCE,
### IN VIOLATION OF CONNECTICUT COMMON LAW

131. Plaintiff hereby incorporates paragraphs 1-64 with the same force and impact as if fully set forth herein.

132. The Defendants owed the Plaintiff a duty to not act negligently in their management and handling of mold in the workplace.

133. The Defendants breached their duty, by, among other things:

   i. Permitting work conditions dangerous to the health of its employees as confirmed by the Connecticut Health Department;

   ii. Not timely remediating the mold it was well aware of, despite knowing

the negative effect on employees, including the Plaintiff.

134.  As a result of the Defendant's negligence, Lopez's respiratory health is irreversibly done, and the severe consequences for her well-being were already altering the normality of her life, not to mention the future effects that being exposed to mold for such a long time will bring to her elderly years, the cost and the suffering she will have to endure after working in such an unhealthy work environment for months and months, to her severe detriment.

135.  Defendant knew or should have known that their actions, described herein, would cause harm to Plaintiff.  Defendants acted in conscious disregard of such foreseeable risk. Defendant's actions in engaging in the above-named unlawful practices and acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiff.

136.  As a result, Lopez has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety, and loss of the ability to enjoy life's pleasures and activities.

**PRAYER FOR RELIEF**

Wherefore the Plaintiff prays that this court award:

1.  Money damages;

2.  Costs;

3.  Punitive damages, attorney fees, and expert witness fees;

4.  Pre-judgment interest

5.  Trial by jury; and

6. Such other relief as the Court deems just, fair, and equitable.


THE PLAINTIFF,
ROSALINA LOPEZ


By: _____/s/_____
     Michael C. McMinn (#*ct27169*)
     **THE MCMINN EMPLOYMENT
     LAW FIRM, LLC**
     1000 Lafayette Blvd., Suite 1100
     Bridgeport, CT 06604
     Tel: (203) 683-6007
     Fax: (203) 680-9881
     michael@mcminnemploymentlaw.com

     *COUNSEL FOR PLAINTIFF*